Margaret **BELCHER**, et al., Plaintiffs,

v.

**OHIO DEPARTMENT OF HUMAN SERVICES**, et al., Defendants.

No. 97CV00530.

United States District Court,
S.D. Ohio,
Eastern Division.

June 9, 1999.

---

**10.** *See also* Defendant's Exhibit G to Reply Brief. Affidavit of Thomas Kenny, dated May 3, 1999.

732

Christopher King, Columbus, OH, for plaintiffs.

Bonnie Linda Maxton, Jeffrey Lynn Glasgow, Anne E. Thomson, Franklin County Prosecutor's Office, Columbus, OH, for defendant.

## ORDER

MARBLEY, District Judge.

This matter is before the Court on Defendant Franklin County Department of Human Services' ("Defendant") Motion for Summary Judgment.[1] Plaintiff, Margaret Belcher, individually and on behalf of Kiddies Kastle, Inc., brings this action alleging violations of her civil rights under 42 U.S.C. §§ 1981 and 1983, and the Age Discrimination in Federally Assisted Programs Act, 42 U.S.C. § 6101, *et seq.* Plaintiff also alleges claims for state law discrimination pursuant to Ohio Revised Code § 4112 *et seq.*, common law breach of contract, defamation, and infliction of emotional distress. For the following reasons, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## II. FACTS

Kiddies Kastle, Inc., a day care provider for low income children in Columbus, was formed in 1969 by Margaret Belcher, the owner and operator of the center. Defendant Franklin County Department of Human Services is a recipient of Federal Block Grant funding, and contracts with licensed day care centers to provide subsi-

---

**1.** Defendant U.S. Department of Human Services was voluntarily dismissed from this action on September 22, 1997. Defendant Ohio Department of Human Services was voluntarily dismissed from this action on April 9, 1999.

dized child care. The subsidy contracts that the Defendant issues are referred to as Title XX contracts. Pursuant to OHIO REV.CODE § 5104.34(a)(1), Defendant is required to establish eligibility requirements for awarding Title XX contracts. Day care centers awarded Title XX contracts are reimbursed a percentage of their expenses allocated for child day care services. To receive a Title XX contract, applicants must meet both state and federal licensing requirements.

Beginning in the late 1970's, Plaintiff began applying for Title XX contracts with Defendant. For unexplained reasons during the 1970's, 1980's, and early 1990's, Plaintiff's applications for Title XX contracts were denied. At oral argument, Defendant's counsel was unaware of the reason that Plaintiff was denied Title XX contracts. Plaintiff contends that the nearly two decades of Title XX contract denial was based on unlawful racial animus.

In 1993, however, Plaintiff was awarded the first of three Title XX contracts by Defendant, the last of which having an effective date of July 1, 1995, through June 30, 1997. After receiving her first Title XX contract in 1993, Plaintiff was excluded from a roster of available facilities that Defendant sent to a large potential client base. Plaintiff maintains that Defendant intentionally excluded her from the roster and that this exclusion caused substantial harm to her facility. In addition, Plaintiff contends that in 1996 a potential client who desired to enroll at Plaintiff's facility was discouraged from doing so by Defendant, and that the potential client was sent to Middlebrook Day Care Center, a Caucasian facility located across the street from Plaintiff's center. Plaintiff also maintains that Defendant intentionally published and circulated false rumors of child abuse, general incompetence, and other negative conditions at Plaintiff's center. The record is unclear as to where and to whom these rumors were circulated.

Finally, Plaintiff contends that the Ohio Department of Health and Human Services (ODHS) and Defendant did not apprise her of her right to bring civil rights claims in relation to the Title XX contracts, as required by 45 C.F.R. §§ 80.4(b)(2) and 80.6(d). In connection with this failure of notice, Plaintiff filed a complaint with the United States Department of Health and Human Services, Office for Civil Rights (USHHS). USHHS initiated an investigation and found that ODHS was in violation of the regulations. Plaintiff and ODHS entered into a resolution agreement which detailed the violations and outlined the remedies thereto. Although Defendant was named in Plaintiff's complaint to USHHS, Defendant was not actually a party to the investigation or the resolution agreement. It is clear, however, that Defendant is obligated to give notice under 45 C.F.R. §§ 80.4(b)(2) and 80.6(d).[2]

On April 29, 1997, Defendant gave notice of its intention to terminate Plaintiff's Title XX contract. The reason Defendant gave for terminating the contract was that enforcement proceedings were initiated against Plaintiff's facility by ODHS for alleged noncompliance with Revised Code

**2.** 45 C.F.R. § 80.4(b)(2) states: "Every application by a state or a state agency to carry out a program involving continuing Federal financial assistance to which this regulation applies shall as a condition to its approval and the extension of any Federal financial assistance pursuant to the application provide for such methods of administration for the program as are found by the responsible Department official to give reasonable assurance that the applicant ... will comply with all requirements imposed by this regulation."

In addition, 45 C.F.R. § 80.6 states: "Each recipient shall make available to participants ... such information regarding the provisions of this regulation and its applicability to the program for which the recipient receives Federal financial assistance, and make such information available to them in such manner, as the responsible Department official finds necessary to apprize such persons of the protections against discrimination assured them by the Act and this regulation."

§ 5101.[3] Defendant contends that it is its policy to terminate all contracts with day care centers, whether minority or majority owned, once Defendant learns that enforcement proceedings have been initiated against that center.[4] Plaintiff retained her license throughout and after the enforcement proceedings. Plaintiff has been unsuccessful, however, in having her Title XX contract reinstated since its termination in 1997.

## III.

Under FED.R.CIV.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV.

### 1. Plaintiffs' § 1981 Claim

■ 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . : . to make and enforce contracts … as is enjoyed by white citizens[.]" The same evidentiary framework applicable to Title VII cases, the *McDonnell Douglas* framework, also governs § 1981 claims. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

Under the *McDonnell Douglas* burden-shifting principle, a plaintiff bears the burden of establishing by a preponderance of the evidence a *prima facie* case and creating a presumption of discrimination by demonstrating: (1) membership in the protected class; (2) that she suffered from an

---

**3.** The record is not clear which subsection of Ohio Rev.Code § 5101 Plaintiff allegedly violated.

**4.** At oral argument Defendant presented statistical evidence indicating that since Defendant initiated its policy of terminating contracts upon notice of enforcement pro-

ceedings in 1993 (Plaintiff was the first to have here contract terminated under this policy), five day care centers have had their contracts terminated as a result of the policy. Of these five day care centers, three were Caucasian owned and two were minority owned.

adverse action; (3) that she was qualified for the position; and (4) that she was treated differently from similarly situated members of the unprotected class. *See Mitchell*, 964 F.2d at 582–83 (*citing McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once the plaintiff establishes a *prima facie* case, a defendant may offer any legitimate, non-discriminatory reason for the action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff. *See id.* (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Although Plaintiff's lawyer has not attempted to show a *prima facie* case of race discrimination under § 1981, a liberal reading of the undisputed facts discussed in the pleadings, in a light most favorable to Plaintiff's case, establishes Plaintiff's initial burden of proof. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (the initial burden is not an onerous burden).

■ First, it is clear that Plaintiff, an African American woman, is a member of a protected class. Second, Plaintiff suffered an adverse action by not receiving the desired Title XX contracts prior to 1993, and also by having her contract terminated in 1997. Third, although disputed at various times, Plaintiff, a Meharry Medical College School of Nursing graduate and licensed day care provider, was qualified to receive the Title XX contracts. Fourth, there is evidence in the record that Plaintiff was treated differently from similarly situated members of the unprotected class. For example, it is undisputed that unprotected child care facilities operated by non-minorities were granted Title XX contracts during the 1970's, 1980's, and early 1990's, while Plaintiff was not.

■ If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discrimina-tory reason for the alleged adverse action. *See Mitchell*, 964 F.2d at 582–83. Here Defendant has not offered a legitimate reason for refusing to enter into contracts with Plaintiff prior to 1993. In fact, at oral argument, Defendant's counsel stated that he was *unaware* of the reason that Plaintiff was denied Title XX contracts prior to 1993. Defendant does, however, offer a legitimate reason for terminating Plaintiff's contract in 1997: the initiation of enforcement proceedings against Kiddie Kastle. Defendant argues that its policy has been applied consistently, to both minority and majority owned centers, since its inception in 1993, and that it is merely coincidental that Plaintiff's contract was the first to be terminated pursuant to the policy. Therefore, Defendant has satisfied its burden of offering a legitimate, nondiscriminatory reason for terminating Plaintiff's contract in 1997, but has failed to offer a legitimate, non-discriminatory reason for its refusal to grant Plaintiff contracts prior to 1993.

Once Defendant offers a legitimate, non-discriminatory reason for terminating Plaintiff's contract, the burden then shifts back to Plaintiff to show that the proffered reason is a pretext for unlawful discrimination. *See Mitchell*, 964 F.2d at 582–83. Plaintiff argues that Defendant's policy is pretext for discrimination in light of repeated incidents of discrimination that she suffered since she obtained a Title XX contract in 1993. Plaintiff points to three incidents to support her pretext argument: (1) her exclusion from the availability roster in 1994, (2) Defendant steering clients to other non-minority facilities, and (3) Defendant's failure to give Plaintiff notice of her right to pursue civil rights actions. It is clear that individually these incidents do not suggest a pretextual discriminatory intent through Defendant's application of the policy. When considered in the aggregate, however, in a light most favorable to Plaintiff, it can be reasonably concluded that the application of the policy to Plaintiff was a pretext for discrimination. Thus,

Plaintiff has satisfied her burden of proof under the *McDonnell Douglas* analysis.

■■■ Defendant maintains that Plaintiff's federal civil rights claims are barred by the applicable statute of limitations. Section 1981 contains no express statute of limitations. Instead, § 1981 actions must be brought within the limitation period for personal injury claims of the state in which the action arises. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In this case, Ohio's two year general statute of limitations, arising from OHIO REV.CODE § 2305.10, is to be applied to civil rights claims arising in Ohio. *See LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir.1995). Thus, a § 1981 claim must be filed within two years from the date of the alleged incident of discrimination. *Id.* Defendant contends that the alleged discrimination of which Plaintiff complains is barred by the two year statute of limitations.

■ Plaintiff argues, however, that his case should be analyzed under the "continuing violation" doctrine, which is applicable where a plaintiff "challenges not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). Under this doctrine, the statute of limitations begins to accrue from the date of the most recent act of discrimination. *See Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). "[T]here are important reasons not to require that a discrimination suit be filed at the first instance of discrimination ... To do so, would frustrate the broad remedial purposes of civil rights laws which encourage the eradication of discrimination." *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. Of Educ.*, 926 F.2d 505, 511 (6th Cir.1991).

■ Courts view "continuing violations" as falling into two categories of narrowly limited exceptions to the usual rule that "statutes of limitations ... are triggered at the time the alleged discriminatory act occurred." *E.E.O.C. v. Penton*, 851 F.2d 835, 837–38 (6th Cir.1988). The first category of continuing violation arises where there is some evidence of present discriminatory activity. *See id.* An example of present discriminatory activity is when an employer commits an unlawful act by giving unequal pay for equal work. *See Dixon*, 928 F.2d at 216. Each unequal payment constitutes a present discriminatory act which triggers the accrual of the statute of limitations. *Id.* Of course, this category requires a "current" as well as "continuing" violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. *Id.* (*citing Bazemore v. Friday*, 478 U.S. 385, 394–95, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). Thus under this first category, the limitations period begins to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts. *Id.*

The second category of continuing violation arises where there has occurred "a longstanding and demonstrable policy of discrimination." *Penton*, 851 F.2d at 838. To establish such a policy, the plaintiff must clearly demonstrate some "over-arching policy of discrimination," and not merely the occurrence of isolated incidents of discrimination. *See Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir.1987).

■ In this case, Plaintiff contends that the continuing violation doctrine applies based on present discriminatory activity. Plaintiff maintains that Defendant discriminated against her by refusing to grant her a Title XX contract prior to 1993, and, after 1993, by excluding her from the availability roster, by not providing notice of her right to pursue civil rights actions, by discouraging a potential client from enrolling at Plaintiff's center, and finally by terminating her contract in 1997. Plaintiff therefore argues that statue of limitations should accrue from the date her contract

was terminated in 1997. The Court is persuaded by this argument. This is precisely the type of situation that the continuing violation doctrine was designed to protect against—an apparent ongoing or continuous pattern of discrimination. *See Hull*, 926 F.2d at 511. Thus, Plaintiff's § 1981 claim is not time-barred.

Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's § 1981 claim

### 2. Plaintiff's § 1983 Claim.[5]

■ Section 1983 provides: "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983. By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of established rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

In this case, Plaintiff argues that the process afforded to her by Defendant was constitutionally inadequate, and thus, Defendant violated her property interests as secured by the Due Process Clause. Plaintiff contends that by refusing to grant her Title XX contracts and by failing to notify her of her right to pursue civil rights actions, Defendant deprived her of property interests.

■ To survive summary judgment on a procedural due process claim, however, Plaintiff must first demonstrate that she possessed a cognizable property interest in the Title XX contracts or in being notified of the right to pursue civil rights

actions. "The existence of a property interests depends largely on state law." *Bailey v. Floyd County Bd. Of Ed.*, 106 F.3d 135, 141 (6th Cir.1997) (*citing Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). A property interest exists and its boundaries are defined by "rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

■ It is unclear whether Plaintiff had an entitlement to a Title XX contract. As previously noted, Defendant was required to establish eligibility requirements for determining which applicants receive Title XX contracts. *See* OHIO REV.CODE § 5104.34(a)(1) (each county department of human services shall implement procedures for making determinations of eligibility for publicly funded child day care). Defendant was required to employ those eligibility requirements to determine the eligibility of each applicant for Title XX contracts. *See id.* It is unclear from the pleadings what eligibility requirements Defendant established for receiving Title XX contracts and whether Plaintiff met those requirements. As such, Plaintiff has not demonstrated an entitlement to receiving Title XX contracts.

On the other hand, Plaintiff did have an entitlement in receiving notice of her right to file a civil rights complaint with the Ohio Department of Human Services or the U.S. Department of health and Human Services, Office for Civil Rights. This right is clearly established pursuant to 45 C.F.R. §§ 80.6(d) and 80.4(b)(2). Thus, by federal regulation, Plaintiff had an established right to be notified of her right to pursue civil rights actions. Defendant

---

**5.** Like claims filed pursuant to § 1981, claims filed under § 1983 are governed by a two year statute of limitations. *See Hull v. Cuyahoga Valley Joint Vocational School District Bd. Of Educ., et al.*, 926 F.2d 505, 510 (6th Cir.1991). Therefore, the § 1981 statute of limitations discussion, including the continuing violation doctrine, applies to Plaintiff's § 1983 claim. Accordingly, Plaintiff's § 1983 claim is not time-barred.

abridged this right, and therefore, Plaintiff has established a valid § 1983 claim.

Therefore, to the extent discussed above, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's § 1983 claim.

### 3. Plaintiff's Age Discrimination Claim

■ Pursuant to 42 U.S.C. § 6101, *et seq.*, "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. This provision is enforced through regulations set forth in the Code of Federal Regulations. *See* 42 U.S.C. § 6103. Pursuant to 28 C.F.R. § 42.736(a), a complainant must exhaust her administrative remedies prior to filing a civil action to enforce rights under § 6101, *et seq. See* 28 C.F.R. § 42.736(a). "Administrative remedies are exhausted if (1) 180 days have elapsed since the complainant filed the complaint and the Department has made no finding with regard to the complaint; or (2) the Department issues a finding pursuant to § 42.731(g)(3), in favor of the recipient." *Id.*

There is no evidence in the record that Plaintiff has exhausted her administrative remedies prior to filing this claim in federal court. Because Plaintiff has not exhausted her administrative remedies, pursuant to 28 C.F.R. § 42.736(a), Plaintiff is precluded from bringing an age discrimination claim under § 6101, *et seq.* Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's § 6101 claim.

### 4. Plaintiff's State Law (§ 4112) Discrimination Claim

■ Ohio Revised Code § 4112, *et seq.*, prohibits unlawful discrimination by employers, employment agencies, personnel placement services, labor organizations, or any person engaged in the business of public or private accommodations or real estate, to discriminate on the basis of race, color, religion, sex, national origin, disability, age, or ancestry without just cause. *See* Ohio Rev.Code § 4112.02. Pursuant to Revised Code § 4112.01, an employer includes the state or any political subdivision of the state. *See* Ohio Rev.Code § 4112.01(A)(2). Therefore, Defendant qualifies as an entity covered under the provisions of § 4112. *See id.*

Section 4112 was designed to redress discrimination by employers against employees that operate in an employment related context. The relationship that Plaintiff and Defendant maintain is a contractual relationship that is not in the employment context, and therefore, not applicable to § 4112. For example, subsection (A) prohibits discrimination in hiring, tenure, terms, conditions, or privileges of employment. In this case, the parties simply do not have an employment relationship that is contemplated by § 4112. Thus, the provisions of § 4112 do not apply to the facts in this case. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's § 4112 claim.

### 5. Plaintiff's Breach Of Contract Claim

■ In Ohio, the essential elements of a cause of action for breach of contract are: 1) the existence of an enforceable contract; 2) the performance (or excuse from performance) of the contractual obligations by the party seeking relief; 3) breach or failure to fulfill contractual obligations by the other party; and 4) damages suffered by the party seeking relief as a result of the breach. *See Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (Ohio App.1995); *see also Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

■ In this case, it is undisputed that Plaintiff was granted a valid Title XX contract, that Plaintiff performed the services of a day care center with the federal financial assistance she received through the Title XX contract, and that Plaintiff suf-

fered damages as a result of the termination of the contract. The only question that remains regarding whether Plaintiff has established a breach of contract action is whether Defendant terminated Plaintiff's Title XX contract for valid, non-discriminatory reasons. This is a question of fact best left to the jury to decide. Thus, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's breach of contract claim.

### 6. Plaintiff's Defamation Claim

 Defamation is a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *See Matalka v. Lagemann,* 21 Ohio App.3d 134, 136, 486 N.E.2d 1220 (1985). A defamation claim has a one year statute of limitations. *See Vodila v. Clelland,* 836 F.2d 231, 234 (6th Cir.1987). Plaintiff acknowledges and concedes that her defamation claim is time-barred. Therefore, the Court need not consider this claim. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's defamation claim.

### IV.

Therefore, based on the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's 42 U.S.C. § 6101, Ohio Rev.Code § 4112, and defamation claims. Defendant's Motion is **DENIED** as to Plaintiff's 42 U.S.C. §§ 1981 and 1983, and common law contract claims.

**IT IS SO ORDERED.**